CITY OF BLYTHEVILLE *v.* LEWIS.

4-9300                                234 S. W. 2d 374

Opinion delivered December 4, 1950.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.

*Gene Bradley,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Mrs. Nola A. Lewis, owns a lot at the southeast corner of Division and Walnut Streets in the City of Blytheville. She applied to the city engineer for a permit to construct a commercial building on the property in which she proposed to maintain a real estate office. A city ordinance defines the "residence district" as that portion of the city lying outside the "fire limits" and provides that it shall be unlawful to erect, for business purposes, any building in said district until a permit is secured by the procedure set forth in the ordinance. Acting under provisions of the ordinance, the city engineer caused a notice of ap-

pellee's application to be published and the matter was referred to the city council when several property owners in the area filed a written protest stating that appellee's lot was in a residential district. Basing its action on the written protest, the city council denied the application without notice to appellee and without a hearing, as provided in the ordinance.

Appellee then filed this suit against appellants, City of Blytheville and its officers, asserting that the ordinance was void as to her property; that her lot was located in a well-established and expanding business district; and that the council's action in denying the permit was arbitrary, unreasonable and unwarranted by the terms of said ordinance.

The chancellor held the ordinance valid, but further found that appellee's lot was a part of an established business district; that the use of the lot for residential purposes was undesirable; that its use for business purposes would not tend to reduce the value of any residential property in the immediate vicinity; and that the action of the council in denying the permit was arbitrary and unreasonable. The court ordered issuance of the permit and enjoined appellants from interfering with appellee in the use of her property for business purposes.

There is little dispute in the evidence which shows that for more than 20 years a well-defined business district, known as "Crosstown", has been maintained along Division Street for several blocks northerly to the point where appellee's lot is located and with Walnut Street as the northern terminus of said district. Division Street is a part of U. S. Highway 61 that runs north to St. Louis, Missouri, and south to Memphis, Tennessee, from Blytheville. Appellee's lot lies on the east side of Division Street and is 150 feet north of the intersection of Highway 61 and Main Street, which is a part of State Highway No. 18. Both highways are heavily traveled.

There are approximately 50 businesses located along Division Street for several blocks immediately south of appellee's lot. Directly across Division Street from appellee's lot is the Rustic Inn, a drive-in lunch stand,

which has been in operation on said lot since 1932. Prior to 1932 the Rustic Inn was located for three or four years on the lot owned by appellee. Immediately south of appellee's lot is the David Real Estate Office which was erected early in 1948. Prior to erection of the real estate office this lot was the site of a filling station for several years. Across Walnut Street north of appellee's property are some vacant lots which are used as a playground. There is a residence facing Walnut Street located on the lot adjoining appellee's property on the east, but the owner acquired this property while appellee's lot was being used for business purposes. Appellee's lot was also formerly the site of a garage and filling station and has never been used for residential purposes.

Several witnesses testified that appellee's lot was more suitable for business purposes than as residential property on account of its location on an extensively traveled highway adjacent to the business district, and that the erection of a real estate office facing west on Highway 61, as contemplated by appellee, would not adversely affect the value of the lots lying east and north for residential purposes. None of the property owners who protested appellee's application either intervened or testified in the chancery court.

The Blytheville ordinance is practically identical in its provisions with the ordinance involved in *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883. Under a state of facts and circumstances more favorable to the municipal authorities than those in the case at bar, this court held the attempt of the council to restrict the growth of an established business district to be arbitrary and unreasonable. The case of *City of Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446, involved the use of a lot adjacent to a business district and situated across the street from lots which had been rezoned for commercial use. We upheld the action of the chancery court in declaring the zoning ordinance void as applied to the Joyner property and enjoining interference with its use for commercial purposes. The following state-

ment from the Pfeifer case was reaffirmed: "As the size of the business district grows, it ceases to be a residence district to that extent within the purview of the zoning ordinance, and any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property." See, also, *City of Little Rock* v. *Sun Building & Developing Co.*, 199 Ark. 333, 134 S. W. 2d 583; *City of Little Rock* v. *Bentley,* 204 Ark. 727, 165 S. W. 2d 890.

Appellants argue that appellee has not exhausted her administrative remedies by seeking a reclassification of her property and is, therefore, not in position to question the action of the city council. The case of *City of Little Rock* v. *Hunter,* 216 Ark. 916, 228 S. W. 2d 58, is cited in support of this contention. The provisions with reference to reclassification, and the steps necessary thereto, which were involved in the ordinance under consideration in that case are not found in the Blytheville ordinance. Appellee fully exhausted the only administrative remedy afforded by the ordinance prior to institution of this suit.

The findings of the chancery court are supported by the preponderance of the evidence and the decree is accordingly affirmed.